UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: MILLER PARKING COMPANY, LLC,

                   Debtor.

Case Number 14-14832
Bankr. Number 09-71272
Honorable David M. Lawson

_____/

BASIL T. SIMON, Bankruptcy Trustee of the
Bruce H. Miller Bankruptcy Estate,

                   Appellant,

v.

JAMES N. MILLER, Trustee, and
JAMES N. MILLER REVOCABLE TRUST,
U/T/A NOVEMBER 19, 1998

                   Appellees.

_____/

**OPINION**

    The question presented in this bankruptcy appeal is whether a Chapter 7 bankruptcy trustee may submit a claim in a different bankruptcy proceeding, not on behalf of the trustee's debtor, but on behalf of the creditors of that first bankruptcy. The bankruptcy court answered no, and this Court agrees. The bankruptcy court's order sustaining the objection to, and disallowing, the claim will be affirmed.

I.

    Miller Parking Company, LLC ("Miller Detroit") was a limited liability company that owned and operated several parking structures and surface lots located in the City of Detroit. Its sole member was Bruce H. Miller. Miller Detroit filed for Chapter 7 bankruptcy protection on October 9, 2009. On October 20, 2009, Bruce Miller filed his own Chapter 7 petition. Basil T. Simon was appointed as Trustee in the Bruce Miller bankruptcy.

Miller Parking's creditors were notified, and the deadline for filing claims in this bankruptcy was established at November 15, 2010. On November 9, 2009, James N. Miller, Bruce's son, on behalf of himself and various Miller family trusts ("the JNM Trust"), filed Proof of Claim Number 5 in this Miller Parking case in the amount of $2,145,648.69.

On October 7, 2011 Trustee Simon filed Claim Number 16 in this Miller Parking case. That claim, which is the subject of the dispute in this appeal, was for $8,113,552.80. The claim form did not state the basis for the claim and no documentation was attached to the claim. Twenty-one months later, on July 31, 2013, the JNM Trust filed an objection to the claim filed by Trustee Simon. Prompted by that objection, Trustee Simon filed an amendment to Claim 16, which states:

> Bruce Miller individually and in conjunction with James N. Miller, his son, controlled and/or operated Miller, LLC, defined in Claim Number 16, as Miller Parking Company, LLC [Miller Detroit], the Debtor in this case;
>
> Upon information and belief there was a unity of interest and/or ownership among Bruce Miller and [Miller Detroit] such . . . that adhering to the fiction of the separate entities' existence would promote [] injustice or inequity;
>
> Upon information and belief [Miller Detroit] and Bruce Miller were mere instrumentalities of each other and each was used to commit wrongdoing and caused unjust loss or injury to creditors; [and]
>
> Based on the foregoing, [Miller Detroit] is the alter ego of Bruce Miller and [Miller Detroit]'s separate existence should be disregarded for the benefit of creditors of Bruce Miller.

*In re Miller Parking Company, LLC*, No. 09-71272, Hr'g Tr. [dkt. #331] at 15-16 (Bankr. E.D. Mich. Nov. 4, 2014).

After a hearing and after allowing the parties to submit supplemental briefs, the bankruptcy court upheld the objection and disallowed the claim on November 4, 2014. In its opinion issued from the bench, the bankruptcy court held that there was no legal authority to support the claim. The

court emphasized that Trustee Simon's claim did not purport to seek recovery of money owed by Miller Parking to Bruce Miller. Instead, the premise of the claim was that Bruce Miller and Miller Detroit were *alter egos* of each other, so that the creditors of Bruce Miller should be able to recover from the assets of the Miller Detroit bankruptcy estate. The court rejected that argument, because, among other reasons, under 11 U.S.C. § 501(a) claims may be filed only by creditors, and Trustee Simon did not fit within the definition of "creditor" stated in 11 U.S.C. § 101(10)(A). The court acknowledged that Trustee Simon had the right — indeed, the duty — to file a claim in the Miller Detroit bankruptcy for money owed to Bruce Miller. *See* 11 U.S.C. § 704(a)(1). But the court

> could find no provisions in the Bankruptcy Code . . . to support an argument that a Trustee has some sort of derivative standing to file a claim in the [Miller Detroit] case to recover money which might be owed to creditors of Bruce Miller. Based on the unambiguous language of 11 U.S.C. Section 501(a) and 11 U.S.C. Section 101(10)(A), [Trustee Simon] is not a creditor in the Miller Parking Company case.

Hr'g Tr. at 19.

The bankruptcy court rejected what it viewed as Trustee Simon's misreading of this Court's decisions in *CH Holding v. Miller Parking Company*, 12-10629, which held that an individual creditor cannot "jump the queue" by suing a non-debtor third party as the alleged *alter ego* of a bankrupt, because a cause of action belongs to the bankrupt's trustee alone, and not to any individual creditor. The bankruptcy court concluded that the "primary issue before Judge Lawson was whether individual creditors can pursue fraudulent transfer actions against parties that allegedly receive fraudulent transfers from the Debtor." *Id.* at 20. Instead, the bankruptcy court viewed this Court's rulings as standing solely for the proposition that, in the case of an *alter ego* claim that is pursued on behalf of a debtor against a non-debtor third party, "only the Chapter 7 Trustee [has] authority to bring fraudulent transfer actions." *Ibid.* The bankruptcy court concluded that this Court's

decisions in *CH Holding* "did not speak to the issue of who may file claims in a bankruptcy case," and it found that, because Trustee Simon did not allege that Bruce Miller was owed any money by Miller Detroit, the Bruce Miller estate did not qualify as a creditor with standing to file a claim. *Id.* at 26. The bankruptcy court' concluding observation noted cogently that:

> Of the $8,311,552.80 claim filed by the [Bruce Miller Estate] Trust[ee] in this case, $7,527,659.60 is duplicative of claims already filed by creditors. It makes no sense for [the Bruce Miller Estate] Trustee to file claims on behalf of creditors who've already filed their own claims [in the Miller Detroit bankruptcy case]. Such an action [merely] places an additional administrative burden on the Trustee in [this] case.

*Id.* at 25-26.

Trustee Simon timely appealed.

II.

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1); *Central States, Se. & Sw. Areas Pension Fund v. U.S. Truck Co. Holdings, Inc. (In re U.S. Truck Co. Holdings)*, 341 B.R. 596, 599 (E.D. Mich. 2006). The Sixth Circuit has held that "finality 'is considered in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning)*, 86 F.3d 482, 488 (6th Cir. 1996)). "Therefore, where an order in a bankruptcy case finally dispose[s] of discrete disputes within the larger case, it may be appealed immediately." *Ibid.* (internal quotation marks omitted); *see also Morton v. Morton (In re Morton)*, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003) (noting that a bankruptcy court's order overruling a Chapter 13 debtor's objection to claims was a final order because it ended litigation on the merits and left nothing for the court but the execution of judgment).

"A district court on appeal reviews the bankruptcy court's factual findings for clear error. It reviews the bankruptcy court's legal conclusions *de novo.*" *In re Global Technovations Inc.*, 694 F.3d 705, 714 (6th Cir. 2012). "When reviewing for clear error, the question is simply 'whether a reasonable person could agree with the bankruptcy court's decision.'" *Waldman v. Stone*, 698 F.3d 910, 922 (6th Cir. 2012) (quoting *Volvo Comm. Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685-86 (B.A.P. 6th Cir. 2005)). The district court will "not disturb the bankruptcy court's findings of fact unless there is the 'most cogent evidence of mistake of justice.'" *WesBanco Bank of Barnesville, Ohio v. Rafoth (In re Baker & Getty Fin. Servs. Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997) (quoting *Newton v. Johnson (In re Edward M. Johnson & Assocs., Inc.)*, 845 F.2d 1395, 1401 (6th Cir. 1988)).

A.

Appellant Simon begins his argument by attacking the JNM Trust's standing to object to his claim in the bankruptcy court. Simon contends that one creditor cannon object to the claim of another creditor of the same class. However, before addressing that argument, the Court must settle the question of Trustee Simon's standing to appeal the bankruptcy court's order disallowing his claim.

"A party 'does not have standing to appeal a bankruptcy court order unless that party is directly and adversely affected pecuniarily by the order.'" *In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009) (quoting *Moran v. LTV Steel Co., Inc. (In re LTV Steel Co., Inc.)*, 560 F.3d 449, 452 (6th Cir. 2009)). "'Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will he have standing to appeal.'" *Ibid.* (quoting *Fid. Bank, Nat'l Ass'n v. M.M.

*Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). "This standing requirement is 'more limited than Article III standing.'" *Ibid.* (quoting *LTV Steel*, 560 F.3d at 452-53).

Following that rationale, Trustee Simon does not have standing to appeal the order sustaining the objection to his claim because he cannot show that the disallowance directly impacted in any way any pecuniary interest of either Simon (as trustee) or the Bruce Miller estate. In a very real sense, Bruce Miller — and therefore his bankruptcy estate — is not a creditor of Miller Detroit. Trustee Simon concedes that, in filing his proof of claim, he was not seeking to collect any debt or claim belonging to Bruce Miller; he contends only that he was compelled to file the proof of claim in order to protect the interests of the creditors of the Bruce Miller bankruptcy estate. Those creditors, however, all have filed their own claims in this Miller Detroit bankruptcy proceeding; the bankruptcy court found that Trustee Simon's claim was almost entirely duplicative of the claims that individual creditors had against both estates.

There is no evidence in the record to suggest that the denial of Trustee Simon's claim will in any way harm the Bruce Miller estate or the trustee, or that it will endanger the ability of the creditors eventually to enforce their separately-filed claims. Because neither Trustee Simon nor the Bruce Miller estate that he represents qualify as persons "adversely affected" by the ruling of the bankruptcy court's order, and because Trustee Simon has not sought or been granted permission to appeal the bankruptcy court's order, Trustee Simon has no standing to pursue the present appeal, and it must be dismissed on that basis alone. *Wells v. Dickinson*, 403 F.2d 635, 636 (6th Cir. 1968); *see also In re Julien Co.*, 146 F.3d 420, 423 (6th Cir. 1998) ("*Wells* is controlling; as a creditor, Bankers Trust does not have standing to appeal without permission from the bankruptcy court.").

B.

The result is different as to the question of the JNM Trust's standing as a co-creditor to object to Trustee Simon's claim. The Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The Sixth Circuit evidently has not confronted the question whether one creditor is entitled to object to a proof of claim filed by another creditor, but appellate courts in other circuits have concluded that a creditor is a "party in interest" and may object to a claim filed by another creditor. *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) ("Parties in interest include not only the debtor, but anyone who has a legally protected interest that could be affected by a bankruptcy proceeding. Therefore, if one creditor files a potentially fraudulent proof of claim, other creditors have standing to object to the proof of claim."); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1318 (4th Cir. 1996) ("As [the debtor's] primary lender, First Union was a party in interest and had a right to object to [the proof of claim filed by debtor's law firm based upon pre-petition unpaid legal fees].") (citing 11 U.S.C. § 1128(b) ("A party in interest may object to confirmation of a plan.")); *id.* at 1318 n.8 ("All creditors of a debtor are parties in interest."); *see also In re J.H. Inv. Servs., Inc.*, 452 F. App'x 858, 862 (11th Cir. 2011) (observing that "when [an unsecured creditor's claim] does not evince [] an intent [to pursue a deficiency claim], the Trustee and *other creditors* have no reason to object") (emphasis added); *In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1392 (7th Cir. 1996) (observing that the bankruptcy court's "adjudication [of] the validity of competing claims could be advisory" because no "existing creditors objected to the recognition of [appellant's] claim").

A creditor that has filed a proof of claim qualifies as a "party in interest" with standing to object to a proof of claim filed by another creditor; the appellant has not cited any authority suggesting otherwise. Trustee Simon relies principally on *In re Charter Co.*, 68 B.R. 225 (Bankr. M.D. Fla. 1986), to support his argument that a creditor cannot object to a claim filed by another creditor. But his selective quoting of that decision disregards its plain holding, which is contrary to the appellant's position. The *Charter* court in fact *allowed* the objections filed by creditors in that case against a proof of claim filed by another creditor. The court noted that "[m]ost courts have determined that a 'party in interest' is a party who has a pecuniary interest in the estate being administered." It explicitly held that "[b]oth the objecting parties in this proceeding meet this test since they assert unsecured claims against the estate." *Id.* at 227.

Although the *Charter* court held that the creditors had standing to raise their objections, it also observed that "[m]ost courts [] have limited the right of a general creditor to object to the claim of another creditor in certain instances in order to promote a more orderly administration of the estate, i.e., in cases where a trustee has been appointed to represent the interests of all general creditors," and that the bankruptcy court may require that a creditor "request the trustee to object to the claim and if the trustee refuses then the court may grant the creditor leave to proceed." *Ibid.* (citing *Schreibman v. Walter E. Heller & Co.*, 446 F. Supp. 141 (D.C.P.R.), *aff'd*, 577 F.2d 723 (1st Cir. 1978); *In re Drive-In Development Corp.*, 371 F.2d 215 (7th Cir. 1966)). The *Charter* decision does not stand for the rule that a bankruptcy court is prohibited from entertaining a objection filed by a creditor to another creditor's claim. The fact that the bankruptcy court in this case chose not to "limit" the right of the JNM Trust to pursue its objection does not render its decision to consider and uphold that objection unsound.

-8-

C.

Turning to the substance of the arguments, Trustee Simon contends that the JNM Trust is barred by the doctrine of judicial estoppel from taking a position that the trustee maintains is contrary to that which it took in the *CH Holding* litigation, and the prior rulings of this Court in *CH Holding* establish not only that the claim filed by Trustee Simon is allowed, but also that the Bruce Miller trustee is the only party with standing to pursue the claims, since the creditors of the Bruce Miller estate may not. For its part, the JNM Trust contends that its position in this bankruptcy matter is not barred by judicial estoppel, because its argument is in fact in harmony with this Court's rulings and controlling Sixth Circuit case law. It believes that the appellant simply has misread the Court's rulings in *CH Holding*, and the bankruptcy court properly disallowed Trustee Simon's proof of claim as unsupported by any basis in law or fact.

To begin, "[a] creditor [] may file a proof of claim." 11 U.S.C. § 501(a). "The term 'creditor' means [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

Trustee Simon has not suggested any way in which he fits within the definition of a creditor of the Miller Detroit bankruptcy estate. In fact, he concedes that his claim is based solely on his attempt to assert the putative interests of the his estate's creditors, not any interest of the debtor in whose shoes he stands. But the plain language of the Bankruptcy Code's definition of "creditor" shows that the Bruce Miller bankruptcy estate trustee does not qualify as a "creditor," because he concedes that Bruce Miller himself had no "claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Trustee Simon's position collides with the reality that "[t]he trustee had no standing . . . to sue on behalf of

creditors. . . . He stands in the shoes of the bankrupt, not of its creditors." *Melamed v. Lake Cnty. Nat. Bank*, 727 F.2d 1399, 1404 (6th Cir. 1984) (applying governing law under the Bankruptcy Act, 11 U.S.C. § 110(a), which was the statutory predecessor to the Bankruptcy Code).

Because the Bruce Miller bankruptcy estate is not a creditor of the Miller Detroit estate, Trustee Simon cannot file a claim.

But Trustee Simon believes he can find authority for his action in this Court's prior decisions in *CH Holding v. Miller Parking Company*, 12-10629. In that case, CH Holding and others, all creditors of Miller Detroit, filed actions against individuals and entities who they claimed were *alter egos* of Miller Detroit and had been the recipients of fraudulent transfers. Miller Detroit was in bankruptcy at the time, and its trustee sued many of the same defendants asserting the same theory. This Court held that the CH Holding plaintiffs' claims related to the bankruptcy, and the Miller Detroit bankruptcy trustee was the proper party to pursue them. The Court dismissed the CH Holding plaintiffs' claims, finding that the plaintiffs were attempting an "end run" around the bankruptcy process, "to recover the exact same assets of Miller Parking Detroit that the trustee also seeks," and to "do exactly what the bankruptcy code prohibits: subverting the equitable distribution of the bankrupt's assets among all its creditors." Op. & Order at 6 [dkt. #39], *CH Holding*, No. 12-10629 (E.D. Mich. Nov. 6, 2012). The Court also observed that the CH Holding plaintiffs, "just like the trustee, [sought] to pierce the veil not of [their] debtor, Miller Parking Detroit, but of a *separate, third-party corporation*, Miller Parking Chicago, which [they alleged] wrongly received and then distributed the assets of the debtor." *Id.* at 9 (emphasis added).

Trustee Simon has attempted to parlay that ruling into a legal basis for filing a claim to assert an *alter ego* theory on behalf of the Bruce Miller creditors. But there is a substantial disconnect

between Simon's reasoning and the *CH Holding* decision. In *CH Holding*, this Court held only that no "authority prevents the trustee, standing in the shoes of a debtor company, from seeking to pierce the veil of a *completely separate corporation* and recover for the benefit of the debtor's estate and its creditors assets that the trustee maintains were given away by the debtor and then distributed to the other company's shareholders." *Ibid.* The case in no way discussed bankruptcy claims administration, nor did it authorize a trustee to pursue derivative claims for other creditors. If *Bruce Miller himself* had a claim to pursue against a non-debtor entity under an *alter ego* theory, the matter might be different. But that is not what happened here.

The present case, in contrast, involves exactly the sort of claim that the Michigan state courts and the Sixth Circuit have held is prohibited under the applicable state law concerning *alter ego* actions. In this case the claim filed by Trustee Simon expressly is premised on the theory that Bruce Miller — Miller Detroit's sole owner — operated Miller Detroit as his own *alter ego*. As the Sixth Circuit explained in *In re RCS Engineered Products Co., Inc.*, 102 F.3d 223 (6th Cir. 1996), a claimant corporation or shareholder cannot sue an entity that the claimant wholly owns or is owned by on the theory that the entity is the claimant's own *alter ego*.

> [I]n order for a subsidiary to be able to assert an alter ego claim against its parent company, the subsidiary would need to show that it suffered "an unjust loss or injury" as a result of it being used by the parent as an instrumentality to commit a fraud or wrong against itself. *Since it is axiomatic that one cannot commit a fraud or wrong against oneself, a subsidiary would never be able to satisfy the standard for disregarding corporate identity under Michigan law.* It would, therefore, appear that under Michigan law a subsidiary may not assert an alter ego claim against its parent company.
>
> That a subsidiary does not have standing to raise an alter ego claim against its parent is further supported by basic principles of corporations law. *The general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders.* Furthermore, an alter ego claim is not by itself a cause of action. Rather, it is a doctrine which "fastens liability on the

> individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetuated not on the corporation but on third persons dealing with the corporation[, and the] corporate form may be disregarded only where equity requires the action to assist a third party." Accordingly, courts apply the alter ego theory and disregard a company's separate corporate identity for the benefit of third parties, e.g., creditors of the corporation, who would suffer an unjust loss or injury unless the shareholders or the parent corporation were held liable for the subsidiary's debts.

102 F.3d at 226 (emphasis added) (citations and footnotes omitted). In this case, Trustee Simon is attempting to do exactly what Michigan law prohibits, by asserting a claim "for the benefit of the corporation or its stockholders." As the court of appeals noted, the appellant's professed theory of recovery is not only prohibited, it is nonsensical in the context of basic concepts of the law governing the separate identities of business forms.

Finally, as the bankruptcy court correctly noted, the remedy in cases where one bankrupt debtor's financial affairs are inextricably intertwined with those of another is substantive consolidation, not the filing of "cross claims" by the respective trustees in the separate bankruptcy proceedings. Although, "[s]ubstantive consolidation is not a procedure or right recognized by the Bankruptcy Code or Rules," *In re Cyberco Holdings, Inc.*, 734 F.3d 432, 438 (6th Cir. 2013), and the Sixth Circuit has "not discussed the concept at length or prescribed factors to consider when it is to be applied, [it has] recognized the procedure without criticism," *id.* at 439. This unusual equitable remedy, however, typically is "employed in cases where the interrelationships of the debtors are hopelessly obscured and the time and expense necessary to attempt to unscramble them is so substantial as to threaten the realization of any net assets for all of the creditors," and where "the practical necessity of consolidation to protect the possible realization of any recovery for the majority of the unsecured creditors far outweighs the prospective harm to any particular creditor." *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 720 (6th Cir. 1992) (quotation marks omitted).

Trustee Simon has not sought to have the estates consolidated; even if he had, he has offered no facts to show that consolidation, which is a rare remedy, reluctantly applied, would be justified in the case of these particular bankruptcy estates.

III.

The bankruptcy court correctly sustained the JNM Trust's objection to Trustee Simon's Claim Number 16. The order disallowing that claim is **AFFIRMED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 21, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 21, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI